So Ordered.

Dated: September 30, 2022



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

| | |
|---|---|
| Greenpoint Asset Management II, LLC,<br>Michael G. Hull, | Case No. 21-25900-gmh<br>Case No. 21-25901-gmh |
| Jointly Administered Debtors. | Chapter 11<br>(Jointly Administered Under<br>Case No. 21-25900) |

Greenpoint Asset Management II LLC,

                Plaintiff,

v.                                   Adv. Proc. No. 22-2034-gmh

Erick Hallick,

                Defendant.

Michael G. Hull,

                Plaintiff,

v.                                   Adv. Proc. No. 22-2035-gmh

Erick Hallick,

                Defendant.

## DECISION AND ORDER

Plaintiffs Greenpoint Asset Management II LLC ("GAM II") and Michael Hull are debtors in jointly administered chapter 11 cases. In these adversary proceedings the debtors request a judgment avoiding as preferences under §547(b) of the Bankruptcy Code liens claimed by Erick Hallick.

The debtor-plaintiffs moved for summary judgment immediately after filing their complaints. Hallick responded by filing a cross-motion for summary judgment and, in the alternative, requesting additional discovery on the issue of the debtors' solvency at the time he acquired the liens. See Fed. R. Civ. P. 56(d) (made applicable here by Fed. R. Bankr. P. 7056).

I

The following facts are either undisputed or established by judicial notice of court dockets. Before the debtors filed their bankruptcy petitions on November 11, 2021, Hallick took several actions to collect his $13.6 million judgment against them (the "Judgment"). ECF No. 10, at ¶¶10–11. Hallick docketed the Judgment in Dane County on May 3, 2021, and in Milwaukee and Waukesha counties on May 7, 2021. ECF No. 10, at ¶¶12–13. He served Hull and GAM II with orders to appear for a supplemental examination under Wis. Stat. §816.03 on May 26, 2021, and June 3, 2021, respectively. *Id.* at ¶¶14–15.

On August 26, 2021, the Dane County Circuit Court ordered GAM II to turn over to Hallick funds GAM II recovers in the jointly administered chapter 11 case *In re Greenpoint Tactical Income Fund LLC,* Case No. 19-29613. ECF No. 10-11, at ¶¶2–4. That order also "entitle[s] [Hallick] to levy against[] and hold all such lien rights as are created by such levy against" any proceeds received from the debtors in *In re Greenpoint*

*Tactical Income Fund. Id.* at ¶2. (This decision refers to the circuit court's August 26 order as the "Levy Order.")

On September 10, 2021, the Waukesha County Circuit Court ordered H Real Estate, LLC, an entity in which Hull has an ownership interest, to divert to Hallick all distributions payable to Hull until the Judgment is satisfied. ECF No. 10-8, at ¶2. On September 17, 2021, the Dane County Circuit Court similarly ordered two other entities in which Hull holds interests, H Global LLC, and Bluepoint Investment Counsel LLC, to direct to Hallick all payments due Hull until the Judgment is satisfied. ECF No. 10-9, at ¶2. (This decision refers to the two September orders as the "Charging Orders" and refers to the Charging Orders and the Levy Order collectively as the "State Court Orders.")

## II

### A

The Bankruptcy Code grants debtors in possession, like the plaintiffs here, most of the rights and powers that the Code affords trustees, including the right to avoid preferential transfers under §547. 11 U.S.C. §1107(a). Section 547, as relevant here, authorizes trustees to avoid certain transfers that are "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt . . .; (3) made while the debtor was insolvent; (4) made . . . within 90 days before the date of the filing of the petition . . .; and (5) that enables such creditor to receive more than such creditor would receive" in a chapter 7 case had the transfer not been made. 11 U.S.C. §547(b).

The debtor-plaintiffs contend that as a matter of law the State Court Orders transfer interests in their property that are avoidable under §547(b). In response, Hallick raises only two issues: He argues that (1) as a matter of law, the transfers were ***not*** made within 90 days before the debtors filed their petitions, and, alternatively, (2) he should be afforded an opportunity to pursue discovery into whether the debtors were insolvent at the time of the transfers.

B

The standard governing summary judgment motions is a familiar one: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Fed. R. Bankr. P. 7056. For these purposes, a fact is material if a dispute about it "might affect the outcome of the suit under the governing law". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that" it "may reasonably be resolved in favor of either party." *Id.* at 248 & 250. A genuine dispute as to a material fact "properly can be resolved only by a finder of fact"; so, if there are any such disputes, "there is the need for a trial", and summary judgment must be denied. *Id.* at 250.

III

We start with the main question in dispute: Are the State Court Orders transfers made during §547's preference period?

A

The State Court Orders are all transfers for Bankruptcy Code purposes. The State Court Orders indisputably create "charge[s] against or interest[s] in property to secure payment of a debt or performance of an obligation"; thus, they are "liens" as defined in §101(37) of the Bankruptcy Code. As such, they are also transfers for purposes of applying §547(b), since the Code defines "transfer" to mean, among other things, "the creation of a lien". 11 U.S.C. §101(54)(A). No debate here.

The parties' debate focuses on when Hallick acquired liens on the debtor-plaintiffs' property. Hallick argues that he acquired liens that became effective under nonbankruptcy law—Wisconsin law—outside the preference period. The debtor-plaintiffs, also looking to Wisconsin law, respond that the liens arose—the transfers were made—when the State Court Orders were entered, which occurred during the preference period.

When a transfer is made for purposes of §547(b), however, is governed by §547(e). Section 547(e)(2) provides that the date on which a transfer is "made" depends on when it is "perfected." And the date on which a transfer of personal property, as is at issue here, is "perfected" is governed by §547(e)(1)(B), which states, "a transfer of . . . property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Once one determines when the transfer was in this sense "perfected", i.e., when under non-bankruptcy law the transferee acquired an interest superior to other potential judicial liens, then one must apply §547(e)(2) to determine when the transfer was "made". Section 547(e)(2), as applicable here, generally provides that a transfer is made when it is effective between the transferor and the transferee if it is perfected within 30 days from the time the transfer is effective; if a transfer is not perfected within 30 days from the time it is effective between the transferor and transferee, then the transfer is made when it is perfected.[1]

Section 547(e)'s text thus channels the application of nonbankruptcy law in determining when a transfer is made for purpose of preference avoidance. Nonbankruptcy law governs when a transfer is effective between the transferor and the transferee—a consideration in determining when the transfer is "made" under

---

[1] Section 547(e)(2) states that

. . . a transfer is made—

(A)  at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);

(B)  at the time such transfer is perfected, if such transfer is perfected after such 30 days; or

(C)  immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or
(ii) 30 days after such transfer takes effect between the transferor and the transferee.

§547(e)(2)(A)—and when the transferee acquires an interest superior to potential judgment liens—a consideration in determining when the transfer is "perfected" under §547(e)(1)(B) and thus "made" under §547(e)(2).

There is no dispute that the State Court Orders were entered and effective between the parties within the preference period, which reaches back to August 13, 2021. The Levy Order was entered August 26, 2021, and the Charging Orders were entered on September 10 and 17, 2021. The debtor-plaintiffs contend that these facts establish conclusively that Hallick's liens are transfers made during the preference period. Hallick responds, however, that, as a matter of Wisconsin law, he acquired liens on the debtors' personal property that arose, or are deemed to have arisen, outside of the preference period.

B

Hallick's arguments that he acquired liens on the debtors' property outside the preference period are principally based on his reading of *Mann v. Bankruptcy Estate of Badger Lines, Inc. (In re Badger Lines, Inc.)*, 590 N.W.2d 270 (Wis. 1999), and *Associated Bank N.A. v. Collier*, 852 N.W.2d 443 (Wis. 2014). A discussion of those cases is necessary to put Hallick's arguments in context.

1

The dispute in *Mann v. Badger Lines* was akin to the one here. Simplifying a bit, a creditor obtained a judgment against Badger Lines from a Wisconsin circuit court in October 1991. On October 30, 1991, the creditor served Badger Lines with an order to appear at a supplemental proceeding before a court commissioner. In December 1991 the court commissioner appointed Mann as receiver to act on the creditor's behalf and ordered Badger Lines to turn over non-exempt assets to satisfy the judgment. *In re Badger Lines, Inc.* (*Badger Lines I*), Nos. 95 C-1243, 92-20872-7, 1996 WL 33364962, at *1 (E.D. Wis. Mar. 14, 1996).

On February 11, 1992, Badger Lines filed a chapter 7 bankruptcy petition. *Id*. at

*2. The state-court receiver, Mann, contended that Wisconsin law afforded him a lien (to collect on the creditor's behalf) that arose in October 1991 when the creditor served Badger Lines with the order requiring it to appear for a supplementary proceeding. *Id.* at *1–2. Mann filed a motion for turnover of funds from the bankruptcy trustee "on the ground that he was the holder of a judicial lien . . . which was prior and superior to all of the lien and priority creditors listed in the final report of the chapter 7 trustee." *Id*. at *1. The bankruptcy court denied the motion, ruling that no lien arose under Wisconsin law until the court commissioner appointed the receiver; thus, Mann's lien was avoidable under §547 because the receiver had been appointed within 90 days from the date the petition was filed. *Id*. at *1, *4.

The district court reversed. It read the venerable *Kellogg v. Coller*, 3 N.W. 433 (Wis. 1879), and *Alexander v. Wald*, 286 N.W. 6 (Wis. 1939), to hold that the judgment creditor obtained a lien on all of the judgment debtor's personal property when it served the debtor with an order to appear at a supplementary examination on October 30, 1991. *Badger Lines I*, 1996 WL 33364962, at *5–6. Though the district court ruled that Mann's lien arose in October—more than 90 days before the February bankruptcy filing—the court remanded the case to the bankruptcy court to consider whether that lien had "priority" over the interests of the bankruptcy estate. *Id*. at *6–7.

On remand, the bankruptcy court concluded that the lien, which the district court held arose from service of the supplemental examination order, was not effective against other lienholders (and against the bankruptcy trustee who stands in their shoes) until the state court entered an order appointing the receiver and directed the turnover of property to him in December 1991. *In re Badger Lines, Inc.* (*Badger Lines II*), 199 B.R. 934, 938–40 (Bankr. E.D. Wis. 1996), aff'd, 206 B.R. 521 (E.D. Wis. 1997). The bankruptcy court thus held that the lien was not "perfected" for purposes of §547—that is, it would not prevail against a creditor on a simple contract that obtained a judgment lien (§547(e)(1)(B))—until the state court had entered the December 1991 order, within the

90-day preference period. *Id.* at 940.

Mann returned to the district court. This time, the district court affirmed, agreeing that the receiver's lien did not become effective as against other potential judgment lienholders—was not a transfer perfected and made for §547 purposes—until the December order, which occurred within the preference period. *In re Badger Lines, Inc.* (*Badger Lines III*), 206 B.R. 521, 526–27 (E.D. Wis. 1997).

Mann appealed to the Seventh Circuit. *In re Badger Lines, Inc.* (*Badger Lines IV*), 140 F.3d 691 (7th Cir. 1998). Finding too little guidance in Wisconsin precedent the Seventh Circuit certified the following question to the Wisconsin Supreme Court: "Does Wisconsin law require that a lien obtained by a judgment creditor who institutes supplementary proceedings under Wis. Stat. § 816.04 be perfected, and if so, how is the lien perfected?" *Badger Lines IV*, 140 F.3d at 699.

The Wisconsin Supreme Court accepted the certification but reframed the question as "whether a creditor who initiates supplementary proceedings under chapter 816 must do more than serve a debtor with notice to appear in order to obtain a superior lien that cannot be overcome by another creditor on a simple contract"? *Mann v. Bankruptcy Estate of Badger Lines, Inc.* (*In re Badger Lines, Inc.*) (*Badger Lines V*), 590 N.W.2d 270, 271 (Wis. 1999). The court answered "no", stating, "[b]ecause we are persuaded both by authority from other jurisdictions and by public policy considerations, we conclude that a creditor's lien is valid and superior against other creditors at the time the creditor serves the debtor with a summons to appear at the supplementary proceeding under Wis. Stat. § 816.03(1)(b)." *Id.*

Based on that answer, Mann prevailed. As the Seventh Circuit subsequently held in reversing the district court, "[u]nder [the Wisconsin Supreme Court's] formulation, Mann's lien was superior to the other creditors as of the date that Badger was served notice to appear at supplementary proceedings." *In re Badger Lines, Inc.* (*Badger Lines VI*), 202 F.3d 945, 946–47 (7th Cir. 2000).

Under *Badger Lines V,* Hallick would prevail (at least in part). He would be deemed to have acquired liens superior to what other judgment creditors could obtain when he served the debtors with orders to appear at supplemental examinations in May and June 2021. Under the terms of §547(e), those liens would be transfers perfected at the time of service, and thus made outside the preference period. 11 U.S.C. §547(e)(1)(B) & (e)(2).

But *Badger Lines V* is not the Wisconsin Supreme Court's most recent ruling on the creation of judgment liens on personal property. Fifteen years later the Wisconsin Supreme Court revisited that issue in *Associated Bank N.A. v. Collier*, 852 N.W.2d 443. It did so in the context of a priority dispute between competing lien creditors that centered on whether a creditor's service of an order to appear for supplemental proceedings gave rise to a collection lien even though that creditor's judgment had not yet been entered in the judgment and lien docket. *Id.* at 445.

One creditor, SB1, purchased a portion of a judgment entered in favor of Associated Bank against the debtor, Collier. By the time SB1 served Collier with an order to appear for supplemental proceedings, a competing judgment creditor, Decade Properties, Inc., had already done so. Decade later discovered, however, that a clerk did not properly docket its judgment against Collier until after SB1 succeeded in serving Collier with an order to appear for supplemental proceedings to collect on its properly docketed judgment. This sequence led to a dispute over whether SB1 or Decade held the superior lien on Collier's personal property—Decade because it first served Collier with an order to appear for supplemental proceedings or SB1 because it was first to serve Collier with an order to appear for supplemental proceedings *after* properly docketing its judgment? The circuit court sided with SB1, holding that no lien could arise in favor of a judgment creditor until the judgment was properly docketed. *Id.* at 447. The court of appeals affirmed in an unpublished decision. *Associated Bank N.A. v. Collier*, No.

2011AP2597, 2012 WL 5935954 (Wis. Ct. App. Nov. 28, 2012).

The Wisconsin Supreme Court also affirmed, but it "modif[ied] the decision of the court of appeals insofar as it could be read to recognize a blanket lien giving any one unsecured judgment creditor the exclusive right to pursue collection from all of a debtor's personal property, simply due to service of an order to appear for supplemental proceedings." 852 N.W.2d at 448. The court "conclude[d] that supplemental proceedings . . . are a discovery tool in aid of judgment collection". *Id.* at 445. Creditor liens arise in personal property, says *Collier*, only after a judgment is entered and the creditor levies on specific personal property. *Id*. at 458 ("A judgment creditor obtains an interest in a judgment debtor's identified, non-exempt personal property superior to other unsecured creditors when it dockets its money judgment, identifies specific personal property and levies that property."). Levying, the court explained, requires the creditor to charge specific property:

> Levying may be accomplished by at least three different means: (1) by executing against specific personal property with the assistance of a sheriff; (2) by serving the garnishee defendant in a garnishment action to seize specific property in the hands of the garnishee defendant; or (3) by obtaining an order to apply specific personal property to the satisfaction of the judgment, which a creditor may do with the assistance of a supplemental receiver.

*Id.*

*Collier* does not expressly overrule *Badger Lines V*, however. It instead casts that decision as one involving a contest over "perfection" decided without a "full record", stating:

> In *Badger Lines*, the trustee in bankruptcy attempted to declare [the receiver's] interest a preference, whereby he could place [the receiver's] money judgment among all of the other unsecured creditors' claims. Of course, [the receiver] had no interest in sharing the assets it had uncovered with other creditors. However, if [the receiver's] lien was created within 90 days of filing the bankruptcy, it would be held to be an avoidable preference and [the receiver] would lose to the trustee. **Therefore, instead of focusing**

**on the creation of its lien, [the receiver] shifted the court's focus to "perfection" of its lien. [The receiver] did so because if perfection occurred more than 90 days before the filing of the bankruptcy, [the receiver] could possibly prevail**.

In *Badger Lines*, we did not have a full record that displayed all the issues that we might have considered; therefore, it differed significantly from the case now before us. ***Badger Lines' statement that the date of service on Badger Lines of the order to appear for supplemental proceedings was the date of "perfection" must be limited to the context in which it arose.*** That context did not include an assertion that common law liens do not require "perfection," but rather, **liens arise in specifically identified, non-exempt personal property when that property is levied.**

*Collier*, 852 N.W.2d at 454 (emphasis added) (footnotes omitted) (citations omitted) (for consistency, references to the creditor, Emerald Industrial Leasing Corporation, were replaced with the creditor's receiver).

*Collier*'s attempt to reconcile its reasoning with *Badger Lines V* is difficult to square with the earlier decision's answer of "no" to the question "whether a creditor who initiates supplementary proceedings under chapter 816 must do more than serve a debtor with notice to appear in order to obtain a superior lien that cannot be overcome by another creditor on a simple contract"? *Badger Lines V*, 590 N.W.2d at 271. It's also difficult to square with the circumstances that gave rise to *Badger Lines V*: the lower federal courts had ruled that a judgment creditor did not acquire a lien superior to those that other judgment creditors might obtain merely by serving the debtor with an order to appear for supplementary proceedings. Those courts concluded that entry of an order appointing the receiver and requiring the debtor to turnover property—one means of levying identified in *Collier*—was required for the lien to have such superior effect. *Badger Lines V* said they were wrong. *Collier*'s reasoning suggests they were right.[2]

---

[2] Hallick does not argue that *Badger Lines VI* binds this court to apply the law of Wisconsin as stated in *Badger Lines V* without considering *Collier*. Any argument to that effect is therefore forfeited. As

C

Before considering how these Wisconsin precedents affect the current contest, recall once more Wisconsin law's role. Again, the Bankruptcy Code makes lien acquisitions "transfers" and directs that those transfers are "made" for preference-avoidance purposes either when they are effective between the debtor (transferor) and creditor (transferee), see §547(e)(2)(A), or when they are "perfected"—i.e., when the creditor-transferee acquires a lien superior to any judgment lien a creditor on a simple contract could acquire, see §547(e)(1)(B) & (2)(B)—depending, as relevant here, on whether they are perfected within 30 days of becoming effective. Wisconsin law informs this federal-law inquiry only to the extent that it governs (1) the existence of the transfer—here, the creation of liens—and (2) when the transferee acquires an interest superior to judicial liens for collection of contractual debt. By operation of §547(e), Hallick's liens are transfers made within the preference period unless (under Wisconsin law) they were superior to other judicial liens outside of that period or they were effective against the debtors outside of that period and were superior to other potential judicial liens no more than 30 days later.

Hallick makes three arguments. They are all unpersuasive.

1

Hallick first argues that although the State Court Orders are levies on the debtors' property that give rise to his liens, Wisconsin law deems those liens to have arisen earlier than the entry of the Orders, back to when Hallick served the debtors with orders to appear at supplemental proceedings. He states, "the creation of a personal property judgment lien **under *Wisconsin Law* relates back** to the dates that the Debtors were served with the Orders to Appear for Supplemental Examination: May 26, 2021

---

explained in the text, moreover, *Collier* left *Badger Lines V* a dead letter. Under these circumstances, *Badger Lines VI*'s application of *Badger Lines V*'s answer to a certified question cannot sensibly be understood to require this court to apply Wisconsin law anachronistically.

and June 3, 2021." ECF No. 9, at 13 (emphasis added). Consequently, writes Hallick, his "interest against Hull's businesses was created May 26, 2021, and his interest against GAM II . . . was created June 3, 2021." *Id.* at 14.

Hallick's suggestion that judgment liens relate back to when the creditor served an order to appear for supplemental proceedings seems irreconcilable with *Collier*'s statements that "supplemental proceedings under ch. 816 are a discovery tool in aid of judgment collection" and that "serving [a creditor] with an order to appear for supplemental proceedings [does] not give rise to a blanket lien on all of [the judgment debtor's] personal property". *Collier*, 852 N.W.2d at 445.

More importantly, that state law might apply relation-back principles to judgment lien priority is irrelevant to determining when a lien was made for purposes of preference avoidance. The Supreme Court so held in *Fidelity Financial Services, Inc. v. Fink*. 522 U.S. 211, 216 (1998). The Court reasoned that under §547(b) a lien is a transfer made when the creditor performs the last act necessary under state law to "perfect" the lien in the manner required by §547(e)(1)(B), even if state law treats the lien as retroactively effective:

> Not until the secured party actually performs the final act that will perfect its interest can other creditors be foreclosed conclusively from obtaining a superior lien. It is only then that they "cannot" acquire such a lien. Thus, the terms of § 547(e)(1)(B) apparently imply that **a transfer is "perfected" only when the secured party has done all the acts required to perfect its interest, not at the moment as of which state law may retroactively deem that perfection effective**.

*Id.* at 216 (emphasis added).

*Collier* makes clear that Wisconsin law required Hallick to levy on the debtors' property in order to foreclose other creditors from obtaining a superior lien. So, under §547(e)(2), Hallick's liens were transfers that occurred no earlier than the dates on

which they were entered in August and September 2021.[3]

Any remaining doubt about this is dispelled by the Seventh Circuit's decision in *Badger Lines IV*, which applies *Fidelity Financial Services* under similar circumstances and states, "we believe that the general principle announced by [*Fidelity Financial Services*] is applicable here. That is, New York relation-back principles (indeed, there are no such principles under Wisconsin law) cannot be used to defeat a trustee's power to avoid preferential transfers." 140 F.3d at 697. *Badger Lines IV*'s declarations that (1) Wisconsin law does not apply relation-back principles to judgment liens and (2) state-law relation-back principles do not affect when a lien is made for purposes of avoidance under §547 are binding on this court and fatal to Hallick's relation-back argument.

2

Hallick next seeks to avoid the application of §547 by contending that he completed the three steps *Collier* says are necessary to acquire a lien by obtaining an "*equitable levy*" outside the preference period. ECF No. 9, at 15. He relies solely on the *dissent* in *Collier* to suggest that Wisconsin law recognizes equitable levy as a means of securing a judgment lien. Quoting the *Collier* dissent, he argues that a judgment creditor's service on the debtor of a notice of supplemental proceeding "operates as an *equitable levy*, and creates *a lien in equity* upon the effects of the judgment debtor, and every species of property belonging to [the debtor] may be reached and applied to the satisfaction of his debts." ECF No. 9, at 15 (quoting *Collier*, 852 N.W.2d at 460 (Abrahamson, C.J., dissenting)). Hallick concludes from this passage in the dissent that

_____

[3] Even if Hallick had acquired an interest in the debtors' personal property through acts taken before entry of the State Court Orders, the dates of entry of the State Court Orders remain the dates on which any transfer was "made" because, applying §547(e)(1)(B) and (e)(2)(B), the State Court Orders were necessary to make those interests superior to other judgment liens, and the State Court Orders were entered more than 30 days after any other act Hallick identifies as affording him an interest in the debtors' personal property, i.e., docketing the judgment, serving orders to appear before a court commissioner for supplemental examinations, conducting supplemental examinations, and moving for charging orders and for a levy. See ECF No. 9, at 12–13.

he "levied the assets when he served the Debtors with . . . Orders to Appear for Supplemental Examinations in May and June 2021." ECF No. 9, at 16.

The *Collier* dissent is a remarkably poor guidepost for determining the law of Wisconsin. See *State v. Perry*, 510 N.W.2d 722, 724 (Wis. Ct. App. 1993) ("A dissent is what the law is not."). The equitable levy concept on which it relies is wholly inconsistent with the supreme court's reasoning in *Collier*. *Collier* identifies three potential ways a creditor can levy on personal property and each of them are authorized by statute: sheriff-assisted execution, authorized by Wis. Stat. §815.05(6); garnishment, authorized by Wis. Stat. §812.01; and orders requiring the application of property to satisfy a judgment, authorized by Wis. Stat. §816.08. 852 N.W.2d at 449. The decision equates levying with seizing the property in a manner authorized by statute, stating:

> Furthermore, **our conclusion that a superior judgment creditor's interest in specific personal property may arise when that property is seized has been the statutory directive of the legislature since at least 1864**. As we explained so long ago in *Knox v. Webster*, 18 Wis. 426 (1864), when interpreting a prior statute, "'[p]ersonal property shall be bound from the time of its seizure on execution.' Before seizure there is no lien[;] . . . [t]he lien takes effect from the date of the levy and by virtue thereof." *Id.* at 429–30 (internal citation omitted). In this regard, the current statute states the same legal principle: "Personal property shall be bound from the time it is seized." Wis. Stat. § 815.19(1). **Accordingly, seizure, often referred to as levying, of personal property is necessary to create a lien in favor of an unsecured judgment creditor.**

*Collier*, 852 N.W.2d at 453 (emphasis added). All the levying methods *Collier* identifies are statutory, and *Collier* expressly rejects the contention that Wisconsin law recognizes an extra-statutory blanket lien arising from a creditor's service of an order to appear for supplemental proceedings. *Collier* thus strongly suggests that the Wisconsin Supreme Court would not recognize equitable levying as a means of acquiring a lien under Wisconsin law. And while *Collier*'s list of statutory means of levying is expressly not

exhaustive, a non-exclusive list of *statutory* means of levying does not entail that a creditor can levy on personal property through *non-statutory* means. More likely, the court simply did not undertake an exhaustive review of all statutorily authorized means of levying—for example, the list does not include charging orders authorized by Wisconsin's limited liability company statute (see former Wis. Stat. §183.0705 (repealed 2022) and Wis. Stat. §183.0503 (effective April 17, 2022))—and recognized the possibility that the legislature might in the future authorize additional ways for creditors to execute on personal property.

The structure of *Collier*'s reasoning is also inconsistent with Hallick's suggestion that *Collier* leaves open the possibility of equitable levying accomplished by serving an order to appear for supplemental proceedings. *Collier* addressed the various statutory methods of executing on personal property, which "require[] a creditor to identify specific, non-exempt property of the debtor to levy", in section II.B.1 of the decision. 852 N.W.2d at 449. After identifying these statutory methods of levying the decision explains that these statutory methods "can be cumbersome and expensive if the details of a debtor's property are not known to the judgment creditor." *Id*. The decision then explains that "[s]upplemental proceedings provide a mechanism by which to obtain information in aid of judgment collection." *Id.* Following this the *Collier* decision devotes an entirely separate section, section II.B.2, to discussing how supplemental proceedings can be used to discover assets potentially subject to levying. *Id.* at 449–50. In form as well as substance, *Collier* thus distinguishes levying on specific personal property of the debtor, which can give rise to a judgment lien, from the commencement of supplemental proceedings to discover the debtor's personal property, which cannot.

What is more, even if Wisconsin law were to recognize liens resulting from equitable levying, Hallick offers neither authority nor argument from which to conclude that such a lien would be superior to a judgment lien that a creditor on a simple contract could acquire by employing a statutory method of levying. Again, this is the

critical inquiry in determining when a lien (a "transfer") was "perfected" and "made", as defined by §547(e). *Collier*'s reasoning strongly suggests that the Wisconsin Supreme Court would hold that a judgment creditor does not acquire a lien superior to that which other judgment creditors could acquire until the creditor levies on specific property in a way authorized by statute. Hallick agrees; his reply brief states, "*Collier* only provides the steps judgment creditors must take in order to obtain an interest in property **that is superior to other creditors**." ECF No. 15, at 6–7 (emphasis added). Hallick used statutory means of levying, which resulted in entry of the State Court Orders during the preference period. *Collier*'s reasoning suggests that only then did he acquire liens superior to judgment liens that other simple-contract creditors could have acquired. Thus, any liens or interests Hallick acquired in the debtors' property were "perfected" and "made" under §547(e)(1) and (e)(2) during the preference period.

### 3

Hallick's reply brief makes one last effort to avoid the effect of *Collier*'s levying requirement. It argues that "the ruling in *Collier* is limited to creating the criteria necessary for a judgment lien to take priority over other competing creditors." ECF No. 15, at 8. And, the reply says, it is not necessary "to determine if, or, more importantly, when Hallick perfected his lien against the personal property of the Debtor, only when the lien was created." ECF No. 15, at 9. "Hallick's judicial liens, i.e., his interest in the Debtors' property," the reply continues, "were created when the respective Debtors were served with orders to appear for supplemental examination . . . , which are outside the 90-day preference period." ECF No. 15, at 2.

As should be clear by now, this is wrong: §547(e)(2) provides that when a transfer is made depends on when it is "perfected" under §547(e)(1)(B), which requires determining when that lien became superior to judgment liens that could be acquired by other creditors on a simple contract. *Collier* instructs that to have a lien on personal property that is superior to other judgment liens Hallick had to levy on the debtors'

property. And, as noted above, Hallick's reply brief concedes this fatal point. ECF No. 15, at 6–7. So, under Hallick's own reading of *Collier*, Hallick's liens are transfers "made" when the State Court Orders were entered because only then were those liens "perfected" (§547(e)(2)), that is, only then could no other creditor on a simple contract "acquire a judicial lien that is superior" (§547(e)(1)(B)).

IV

Hallick alternatively opposes the debtors' request for summary judgment under Federal Rule of Civil Procedure 56(d), contending that he seeks discovery into whether the debtor-plaintiffs were insolvent, a preference-avoidance requirement imposed by §547(b)(3). Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it [and] . . . allow time to . . . take discovery". Fed. R. Civ. P. 56(d)(1) & (2).

Hallick's opposition to the debtor-plaintiffs' motions for summary judgment requests that the court grant him "time to conduct discovery of the assets of the Debtors (including a period of time necessary to allow for expert opinion as to value), prior to further responding to the Debtors' summary judgment motions." ECF No. 9, at 18.

The debtor-plaintiffs oppose Hallick's request for discovery. Discovery can be skipped, they say, because although Hallick has had little opportunity to take discovery in these adversary proceedings, the parties have been engaged in litigation since 2017 and "[a]nything . . . capable of being discovered has already been discovered by the Defendant (or should have been discovered) . . . ." ECF No. 13, at 24. According to the debtor-plaintiffs, Hallick "already has all conceivable information about the Plaintiffs' solvency due to the lengthy litigation between parties." *Id.* at 2. The debtor-plaintiffs also contend that Hallick "fails to meet the burden of a litigant seeking to delay summary judgment on the basis that more discovery is needed . . . [because he] fails to state specific reasons why he cannot present facts in opposition to the Plaintiffs' . . .

motion." *Id*. And, they say, Hallick has requested leave to prosecute derivative preference claims with respect to Hull, so Hallick must also maintain that Michael Hull was insolvent in the preference period. ECF No. 13, at 26.

The posture of these proceedings makes determining the value of discovery difficult. In moving for summary judgment on their preference claims, the debtor-plaintiffs rely on §547(f)'s presumption that the debtors were insolvent in the 90 days before they filed for bankruptcy, along with their sworn schedules, which they argue "indicate" that they were insolvent. See Adv. Proc. No. 22-2034, ECF No. 3–2, at 5–6 and Adv. Proc. No. 22-2034, ECF No. 3-2, at 6–7. Hull adds that his sworn schedules along with the claims filed in his case "demonstrate[] the overwhelming evidence establishing insolvency." ECF No. 13, at 26.

Maybe so. But there's been no opportunity here for Hallick to test this one-sided marshaling of evidence. And, as Hallick observes, Hull's bankruptcy schedules do not provide required asset values for H Real Estate, H Global, or Bluepoint Investment Counsel. Hallick also reports that he has requested information from which to evaluate whether there is evidence that rebuts §547(f)'s presumption of insolvency. ECF No. 9, at 7–8.

The Seventh Circuit has directed "that the sound reasons for denying a properly supported Rule 56(d) motion most often are either (1) the moving party's failure to pursue discovery diligently before the summary judgment motion, or (2) the apparent futility of the requested discovery." *Smith v. OSF HealthCare System*, 933 F.3d 859, 866 (7th Cir. 2019). Neither of those reasons are present here.

Though Hallick's support for his request for discovery under Rule 56(d) is hardly textbook, the procedural circumstances justify affording him an opportunity to pursue targeted discovery into the debtors' solvency during the preference period.

V

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1. Erick Hallick's cross-motion for summary judgment is DENIED.

2. With respect to the debtor-plaintiffs' motions for summary judgment, the court declares that the debtor-plaintiffs have established all elements necessary to afford them a right to summary judgment avoiding the State Court Orders under 11 U.S.C. §547, *except* for the need to establish insolvency as required by §547(b)(3).

3. The debtor-plaintiffs' motions for summary judgment are otherwise denied subject to the terms of this order.

4. Hallick may conduct discovery through and including December 22, 2022, as authorized by Part VII of the Bankruptcy Rules to the extent that the discovery is relevant to the debtor-plaintiffs' solvency as required by §547(b)(3) and otherwise within the limits of Fed. R. Civ. P. 26(b), made applicable here by Fed. R. Bankr. P. 7026. No other discovery is permitted without leave of court.

5. By no later than January 23, 2023, Hallick must either: (a) file a statement that as to each debtor-plaintiff there is no genuine disputed issue of material fact regarding their insolvency during the preference period or (b) file a statement that there is a genuine disputed issue of material fact as to the solvency of one or both debtor-plaintiffs during the preference period, accompanied by proposed facts that are supported by declarations or other materials described in Fed. R. Civ. P. 56(c)(1) from which a reasonable finder of fact could determine that grounds exist sufficient to rebut §547(f)'s presumption of insolvency as to one or both debtor-plaintiffs.

6. If Hallick files a timely statement that there is a genuine disputed issue of material fact as provided in numbered paragraph 5 of this section V, the debtor-plaintiffs must file a response no more than 14 days later.

7. If Hallick fails to timely file a statement required by numbered paragraph 5 of this section V, the debtor-plaintiffs may request, and the court may enter (either following a request or sua sponte) summary judgment avoiding the contested liens without further notice or a hearing.

8. If Hallick files a timely statement that there is a genuine disputed issue of fact and debtor-plaintiffs' fail to file a timely response as required by numbered paragraph 6 of this section V, the court may, without further notice or hearing, deem debtor-plaintiffs to have conceded that they are not entitled to summary judgment on their preference claims and schedule further proceedings accordingly.

#####